CASE No. 1007.

ADAMS v. AGNEW.

1. A being indebted to B for balance on bond of long standing, given for the purchase money of land, B, in May, 1868, accepted a new bond from A and sued it to judgment, but obtained no endorsement of a certificate that the judgment was based upon an obligation for the purchase of the land. *Held*, that the judgment was founded upon the new bond, and that, under the constitution of April, 1868, A was entitled to his homestead exemption in such land as against this judgment.

2. A judgment taken by default before the clerk of the court since the act of November 25th, 1873, amending the code, is absolutely void; nor will it be made valid by the refusal of *ex parte* motions afterwards made (1) by the plaintiff to docket and take judgment in open court, and (2) by junior judgment creditors to vacate; or even, it seems, by a decree declaring the judgment valid in an action brought by other judgment creditors to set it aside, to which action the judgment defendant was a party and did not appeal.

3. An assignment of homestead, together with an accompanying plat referred to for a description by metes and bounds, was returned in due time to the proper officer, who recorded the assignment but not the plat, which was put into a drawer in his office. The judgment creditors knew of the assignment and that defendant was living on the land, claiming it as his homestead. *Held*, that the defendant was entitled to his homestead so laid off and assigned.

Before THOMSON, J., Richland, March, 1879.

This was an action commenced September 30th, 1878, by Thomas Agnew to recover two hundred acres of land from Robert Adams. Agnew claimed as purchaser at sheriff's sale under executions against Adams. The defendant claimed that the tract

described in the complaint was his homestead, duly assigned and laid off to him before the sheriff's sale. The land levied upon and sold by the sheriff seems to have contained nine hundred and two acres, and to have been bid in at $225. It was levied on in 1874; the assignment of homestead was dated January, 1875, but no sale was made under the levy until March, 1878. This action was to recover the two hundred acres. It does not appear that the possession of the lands in excess of the homestead was withheld by the defendant. At the sale notice was given by Adams' attorney of the assignment of the homestead.

After the close of testimony for the plaintiff, defendant moved for a non-suit, which was refused. There were several instructions to the jury, requested by defendant, and exceptions to evidence and to the rulings and charge of the Circuit judge, but they were not considered by this court and need not be stated. Every fact necessary to a full understanding of the case, and also the points decided, are sufficiently stated in the opinion.

*Mr. J. E. Bacon,* for appellant.

*Mr. Youmans,* attorney-general, contra.

March 22d, 1881. The opinion of the court was delivered by

McGowan, A. J. This was an action for the possession of a tract of land known as the " Bluff Plantation." The defendant resisted the plaintiff's right to recover *two hundred acres* of the tract, mainly on the ground that it " had been assigned to him as a homestead, according to the provisions of the constitution and laws of the state."

Prior to 1875, several judgments and executions had been lodged against the defendant, Robert Adams, and in October of that year these executions were levied upon the Bluff plantation, then described as containing nine hundred and two acres, in the possession of the defendant. He made application for homestead, and the sheriff issued his warrant, naming in it all the cases in his office against the defendant (except that of Amie A. Weston, assignee, to which particular reference will be made hereafter,) appointing appraisers to lay off homestead for the de-

fendant. The appraisers made an assignment, which, together with a plat of the land assigned, was returned in proper time "for record in court." The clerk recorded the assignment. It seems, however, that he did not copy the plat upon the record, but placed it in a desk in his office. At that time none of the creditors objected to homestead, but, after the decision in *Cochran* v. *Darcy*, 5 *S. C.* 126, was published, it was mooted that two of the judgments against Robert Adams had been rendered upon contracts older than the constitution, and, as against them, the assignment of his homestead could not stand. These judgments were as follows:

1. *That of Amie A. Weston, assignee,* v. *Robert Adams and James P. Adams,* upon a bond dated *April* 24th, 1866, for $727.23. This judgment was rendered by default before the clerk of the court, out of term time, *February* 3d, 1874. A motion to docket the case and take judgment in court had been refused, and also an application to set aside the judgment had been denied by the same judge, on the ground that at the time the judgment was rendered before the clerk there was no valid law forbidding it.

2. *The judgment of James P. Adams* v. *Robert Adams,* for $3800, upon a bond bearing date *May* 25th, 1868, but alleged to be the renewal of an indebtedness older than the constitution, part of which was the balance of a bond given for the half interest of James P. Adams in lands (seventeen hundred and sixty acres,) which James P. and Robert had inherited from their father, and of which the "Bluff Plantation" was part. Robert had sold off nearly half of it, leaving in his possession little more than his own half, nine hundred and two acres.

The judgment creditors, James P. Adams and Amie A. Weston, one a cousin and the other a brother of Robert Adams, never disturbed his possession of the homestead, but some time prior to 1878 they assigned their judgments to *John Agnew, Jr.,* who, as assignee, directed the sheriff to levy and sell the land which had been assigned to the defendant as homestead. The defendant gave notice of his claim of homestead, but, March, 1878, the sheriff sold, as he testified, "simply according to his advertisement, and as sheriffs always sell." *Thomas Agnew* became the

purchaser at a price less than half the rental value for one year, took sheriff's titles, reciting that the land was sold under the execution of Amie A. Weston, assignee, and brought this action to recover it from the defendant. Upon the facts, of which the above is only a meagre outline, the case was tried, and, under the direction of the judge, the jury found for the plaintiff "two hundred acres of land, fully described in a plat made by S. G. Henry, Esq., January 16th, 1875, and marked 'Homestead of Robert Adams.'" The defendant made a motion for a new trial, which was refused, and the appeal comes to this court.

The grounds urged for non-suit and a new trial, and the exceptions for errors of commission and omission on the part of the judge, are very numerous, but the real questions are involved in the following rulings :

"That the judgments of James P. Adams and Amie A. Weston, assignee, were founded on bonds executed before the adoption of the constitution; the bond of James P. Adams, although dated May 26th, 1868, being, according to the evidence, the renewal of an old bond given in 1859 for the purchase money of the land in dispute, and cited the case of De La Howe *v.* Harper.

"That the return of the appraisers setting off the homestead had not been recorded, as required by the provisions of the homestead act, inasmuch as the plat, which is a part thereof, had never been recorded, and there is no description by metes and bounds or otherwise, of the homestead premises, and therefore the jury, provided they found the other facts for the plaintiff, must return a verdict for the plaintiff for the land in dispute, and such damages, if any, as they might think the testimony warranted."

The question is, whether there was error in these rulings. It is conceded that the defendant is not entitled to retain the homestead which was laid off to him in 1875, if either the judgment of Amie A. Weston or James P. Adams was a valid judgment, and rendered upon a contract made before the constitution of 1868. If that is shown, the assignment of homestead made must be considered as void, *quoad such judgment,* which conferred authority upon the sheriff to sell, and the purchaser can recover it from the defendant, notwithstanding his claim of homestead.

*Bull* v. *Rowe,* 13 *S. C.* 355.   But if it appears that neither of these judgments makes such a case, then, no constitutional difficulty being in the way, the defendant, like any other citizen, is entitled to the much-valued right of homestead and to retain that already laid off to him.   Upon this question the *onus* is on the plaintiff, who claims that these cases fall within the exceptional class, which excludes the right of homestead.

1. *As to the judgment of James P. Adams.*   It was recovered on a bond bearing date *May* 25th, 1868, after the adoption of the constitution, which was. ratified by the people at an election on April 14th, 15th and 16th, 1868.   This bond was certainly *prima facie* evidence of the contract of the parties as of that date. The plaintiff and defendant were brothers.   Robert swears that " on May 23d, 1868, James P. and witness had a settlement of old matters between them.   James P. said : ' Let's wipe out old scores and begin over.'   We did so, and I gave him a bond (the one now . in judgment) for $3800.   Everything I owed James P. was put in this new bond.   This bond was payable at a different time from the old bond, and at twelve per cent., I think, instead of seven per cent. on the old one."   It is said that declarations of Robert were proved, in some particulars, in conflict with this statement.   In any point of view this testimony raised a question of fact, whether the new bond was a novation or merely a substitution for the old indebtedness, and it was error on the part of the Circuit judge to withdraw that question from the jury.   But we do not think that any such issue was properly involved.   From the nature of the question the inquiry was simply *as to the time* the contract was made.   The constitution of the United States declares " that no state shall pass any law impairing the obligation of contracts," without any reference to the time when the consideration arose, whether it was old or recent, a bond of older date or property sold that day.   That which the constitution seeks to protect is the *obligation of the contract,* and the bond affords at once evidence of the contract and the means of enforcing it.   The case of *De La Howe* v. *Harper,* 5 *S. C.* 470, cited by the Circuit judge, has no analogy to this.   That was the case of an *administration bond,* which was executed before the adoption of the constitution and a *devastavit* established against

the administrator afterwards. The question was, whether the judgment for that *devastavit* should, in regard to a claim for homestead, be considered as of the date of its recovery, or have reference back to the date of the administration bond, upon which it was established. The court say: "*The obligation on which the judgment* was founded was in existence at the adoption of the constitution of 1868, and was a proper subject for the protection afforded by the clause in the constitution of the United States," &c.

Besides, the plaintiff, James P. Adams, accepted the bond given May 25th, 1868, and sued on it and recovered judgment, which is the record in the case, but has upon it no such endorsement as a certificate of the court "that the same was issued to enforce the payment of an obligation contracted for the purchase of said homestead," as the law in such case requires, (15 *Stat.* 231), and neither the plaintiff nor his assignee, who holds under him, can now deny that the bond is the contract of the parties at its date, or go back of it into the consideration thereof. "A party cannot occupy inconsistent positions, and where one has an election between several inconsistent causes of action, he will be confined to that which he first adopts. Any *decisive* act of that party, done with knowledge of his rights and of the fact, determines his election and makes an estoppel." *Bigelow on Estoppel* 578; *Rodurmond* v. *Clark*, 46 *N. Y.* 354; *Hyde* v. *Baldwin*, 17 *Pick.* 303; *Dewey* v. *Bell*, 5 *Allen* (*Mass.*) 165; *Hooper* v. *Hubbard*, 7 *Mass.* 177. The sheriff, or his adviser, took this view, for it will be remembered that he placed this judgment among those in which proceedings issued to assign homestead in 1875. We think the Circuit judge erred when he charged the jury "that the judgment of J. P. Adams was founded upon a bond executed before the adoption of the constitution."

2. *As to the judgment of Amie A. Weston, assignee.* This was undoubtedly founded on a bond executed before the adoption of the constitution, viz., on April 24th, 1866; but it is alleged that it is not a valid judgment, having been rendered before the clerk of the court February 3d, 1874, not in "term time and in open court." On November 25th, 1873, the legislature passed an amendment to the code as to the rendition of judgments *by* de-

fault. The act was ratified February 26th, 1873, the last day of that session, and was not returned approved by the governor until the next regular constitutional session, November, 1873. In the meantime there had been an extra session of the legislature, and the judge of the Fifth Circuit held that the said act had not become a law, for the reason that it should have been "returned" to the *extra session* under Section 22, Article III., of the constitution, which declares that "unless the general assembly, by their adjournment, prevent its return, in which case it shall not have such power and effect unless returned within two days after *their next meeting.*" But it has been decided that said amendment was properly returned, approved, to the next *regular session,* November, 1873. *Arnold* v. *McKellar,* 9 *S. C.* 338. That amendment is in these words : "That after the passage of this act no judgment shall be obtained in the Court of Common Pleas except during term time and in open court, and it shall be the duty of the clerk to place all cases filed in his office, in which there is no defence, upon a docket to be prepared by him for that purpose. * * *. And no execution shall be signed on judgments obtained by default in any other manner than is herein provided." 15 *Stat.* 502.

After this amendment became law, the alleged judgment of Amie A. Weston was rendered by the clerk of the court, not "during term time and in open court," in direct violation of its terms, which not only affords no authority for such a proceeding, but positively forbids it. This was not a mere irregularity susceptible of amendment, but a substantial defect, rendering it absolutely void, as much so as if it had been rendered by the mayor of the city of Columbia. We are, therefore, constrained to hold that the alleged judgment of Amie A. Weston, assignee, and the execution issued thereon, are absolutely void. "A judgment pronounced by a tribunal having no authority to determine the matter in issue, is necessarily and incurably void, and may be shown to be so in any collateral or other proceeding in which it is drawn in question." *Freem. on Judg.,* § 120 ; *Hill* v. *Robertson,* 1 *Strob.* 1 ; *Thompson* v. *Tolmie,* 2 *Pet.* 169.

But it is said that a motion was twice made and refused to place the case on the proper calendar and take judgment in open

court, and also that a complaint was filed by D. Crawford & Sons and other creditors, to set aside the judgment for the defect stated, in which it was held that the judgment was good; that to this last proceeding Robert Adams was made a party defendant, and did not appeal from the decree holding that the judgment was regular, and, therefore, so far as he is concerned, the matter is *res adjudicata,* and he cannot now claim that it is no judgment. Neither of these orders, nor all of them together, amounted to the rendition of a new judgment. They were simply rulings upon the question whether a judgment had been previously rendered. As to the first two, it does not appear that Robert Adams was notified. They were orders proposed and refused, and in such case the doctrine of *res adjudicata* does not apply. It is denied that the proceeding of D. Crawford & Sons was in evidence, but assume that it was; mere omission to appeal could not breathe vitality into that which never had existence. " A void judgment is, in legal effect, no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one." *Freem. on Judg.,* § 117. " Consent will not confer it, and it is so wanting in the color of judicial authority that it will not be reversed on appeal." *Id.* 91 ; *Ex parte De Hay,* 3 *S. C.* 567.

3. *As to the assignment of homestead.* The judge charged that the return of the appraisers setting off the homestead had not been recorded, as required by the provisions of the homestead act, inasmuch as the plat, which is a part thereof, had never been recorded, and there is no description by metes and bounds, or otherwise, of the homestead premises. The commissioners made return as follows : " We have appraised and set off by *metes and bounds* to the said debtor, as his family homestead, all that piece and parcel of land designated on the plat hereunto annexed, and marked ' family homestead,' containing two hundred acres, and have appraised the same at the sum of one thousand dollars, as will more fully appear by the plat hereto annexed," &c. They returned the assignment and plat to the clerk of the court, who recorded the assignment and placed the plat in his desk, where it could be easily referred to. The law does not, in express terms,

require that the plat shall be recorded. The appraisers are re-quired to make return " for record in court," giving the metes and bounds, &c., " for which purpose they shall be allowed to call in the aid of a surveyor, if they or a majority of them, think it necessary." 15 *Stat.* 370. The metes and bounds appeared in the plat, which was referred to by the assignment, and was in easy reach. It was properly returned by the proper parties, in proper time and to the proper officer. Should the defendant lose his homestead, not for any neglect of his own or of the apprais-ers, but of the clerk? The right to homestead *is a continuing right,* and if the effort to assign it was a failure, it may still be perfected. There is no surprise. All the judgment creditors knew that homestead had been assigned and that the defendant was living upon it. There can be no practical difficulty in locating the homestead, as the plat is still in the clerk's office.

The judgment below is set aside and the case remanded for a new trial.

SIMPSON, C. J., and McIVER, A. J., concurred.